Ruth C. CHAPMAN, Plaintiff,

v.

SOUTHEAST REGION I. L. G. W. U. HEALTH AND WELFARE RECREATION FUND et al., Defendants.

Betty J. PETTY, Plaintiff,

v.

SOUTHEAST REGION I. L. G. W. U. HEALTH AND WELFARE RECREATION FUND et al., Defendants.

Hazel S. MURRAY, Plaintiff,

v.

JONATHAN LOGAN, INC., et al., Defendants.

Evelyn V. HYATT, Plaintiff,

v.

JONATHAN LOGAN, INC., et al., Defendants.

Civ. A. Nos. 66–791 to 66–794.

United States District Court
D. South Carolina,
Spartanburg Division.

March 30, 1967.

Thomas A. Evins, Means, Evins, Browne & Hamilton, Thomas C. Bradley, Jr., Erwin & Bradley, Spartanburg, S. C., for plaintiffs.

J. Bratton Davis, Graydon & Davis, Columbia, S. C., for defendants Spartan Undies, Inc. and Jonathan Logan, Inc.

E. W. Mullins, Nelson, Mullins, Grier & Scarborough, Columbia, S. C., for defendants International Ladies Garment Workers Union & International Ladies Garment Workers Union, Local 581.

E. N. Zeigler, Florence, S. C., for defendant Southeast Region I. L. G. W. U. Health and Welfare Recreation Fund.

## OPINION AND ORDER

DONALD RUSSELL, District Judge.

These four actions, all of which present similar issues both of law and of fact, were originally commenced in the state court and were removed, on petition of the defendants, to this Court under the authority of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. Section 185(a). The plaintiffs now move to remand.

Because of the similarity of issues, motions in the four cases were consolidated for hearing and will be disposed of in this order.

The facts relevant to removal, as set forth in the complaints and removal petitions, are comparatively simple. The plaintiffs are non-union employees of the defendant Jonathan Logan, Inc. (hereinafter called Logan). Originally, they had been employed by another corporation, Spartan Undies, Inc., which, in 1964, was acquired by and became a subsidiary of Logan. The employees of Spartan Undies, Inc., prior to its purchase by Logan, were apparently unorganized. However, after the acquisition of Spartan Undies, Inc., a collective bargaining agreement was entered into with the defendant "International Ladies' Garment Workers' Union and/or International Ladies Garment Workers' Union, Local 581" (hereinafter called Union), as the representative of the employees of Logan and its subsidiary Spartan Undies, Inc.

While they were employees of Spartan Undies, Inc., prior to its acquisition by Logan, the plaintiffs received by way of vacaton pay two per cent of their "gross annual earnings during the full calendar year immediately preceding June 1 of each such year." By the terms of the contract executed between the Union and Logan, however, the vacation pay due the plaintiffs was thereafter "paid to her (them) by the Southeast Region I. L. G. W. U. Health and Welfare Recreation Fund (hereinafter called Fund) which thus became the agent of the Defendant, Jonathan Logan, Inc., and its wholly-owned subsidiary the Defendant, Spartan Undies, Inc., for the purpose of paying the Plaintiff's vacation pay." Plaintiffs received payment under this provision of the contract, without change in amount from the previous arrangement existing while employed by Spartan Undies, Inc., prior to its purchase, except that their "vacation pay was based upon her (their) earnings for the calendar year ending December 31, 1964, rather than the year ending June 1, 1965."

For the year 1965, the plaintiffs allege that by reason of "the terms and provisions, as Plaintiff(s) is (are) informed and believes, of the agreement or labor contract existing between these Defendants (i. e., Logan and/or Spartan Undies, Inc.) and the I.L.G.W.U. and/or Local 581 (Union)", their vacation pay for the year 1965 was illegally reduced by the deduction therefrom of "a service charge made by the Defendant, Welfare Fund, against employees of Spartan (Undies, Inc.) who were not members of

the Defendant, I.L.G.W.U., and that no similar deduction would have been made if Plaintiff(s) had been a member of said union." By reason of such illegal deduction, made pursuant to the labor contract, the plaintiffs assert that the Defendants have unlawfully withheld from them, in violation of both Section 40–46.8 and Section 40–46.3 ("popularly named Right to Work statute"), of the Code of Laws of South Carolina, 1962, and, as provided in such Sections, they are entitled to actual and punitive damages, attorneys' fees, and an injunction against future illegal deductions.

■ The controlling issue upon these motions is the applicability of Section 301 to the actions filed by the plaintiffs, it being conceded that the defendants Logan and Spartan Undies, Inc., are engaged in interstate commerce within the meaning of the Labor Management Relations Act. If these actions are properly cognizable under that Section, their removal is authorized by Section 1441(b), 28 U.S.C., providing for the removal of "[A]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States * * *." Johnson v. England (C.C.A.Cal.1966), 356 F.2d 44, 47, cert. den. 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673; Haynes v. United States Pipe & Foundry Company (C.C.A.Ala. 1966), 362 F.2d 414, 415; Old Dutch Farms, Inc. v. Milk Drivers & Dairy

Emp. U., etc. (D.C.N.Y.1963) 222 F. Supp. 125, 128, 129.

Despite some early differences of construction,[1] the Courts, in recent cases, "have indicated that the federal courts should take a broad view of the jurisdiction granted by sec. 301(a)",[2] recognizing that the section is not merely procedural but represents "the source of substantive law", not to be read "narrowly as only conferring jurisdiction over labor organizations"[3] but as extending jurisdiction as well to suits by an individual employee "to vindicate individual employee rights arising from a collective bargaining contract."[4]

■■ Viewed in this light, these actions clearly are justiciable under Section 301(a). The plaintiffs sue to recover for vacation pay due them but wrongfully diminished by certain deductions made therefrom. Cf. International Union, United Auto, etc., Workers of America, AFL-CIO v. Hoosier Cardinal Corp., (1966) 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192. The right of the plaintiffs to vacation pay itself depends admittedly on the provisions of the collective bargaining contract between Logan and the Union. According to the plaintiffs themselves, the deductions allegedly made therefrom were made by reason of and in accordance with "the terms and conditions * * * of the agreement or labor contract existing between these Defendants (Logan and/or Spartan Un-

1. Association of Westinghouse Salaried employees v. Westinghouse Electric Corp., (1955), 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, reh. den. 349 U.S. 925, 75 S. Ct. 657, 99 L.Ed. 1256.

2. Parks v. International Brotherhood of Electrical Wkrs., (D.C.Md.1962), 203 F. Supp. 288, 292, rev. on other grounds, 314 F.2d 886, 916, cert. den. 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142, but the court reiterating the conclusion of the District Court on this point, adding that "the Supreme Court has consistently favored the broad view of section 301(a) jurisdiction."

3. Textile Workers Union of America v. Lincoln Mills (1957) 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972.

4. Smith v. Evening News Association (1962) 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246; Broniman v. Great Atlantic & Pacific Tea Company, (C.C.A.Mich. 1965) 353 F.2d 559, 561; Kaferle v. Fredrick (C.C.A.Pa.1966), 360 F.2d 536, 539; Fiore v. Associated Transport, Inc. (D.C.Pa.1966), 255 F.Supp. 596, 599; Humphrey v. Moore (1964) 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, reh. den. 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655; Brown v. Sterling Aluminum Products Corporation (C.C.A.Mo.1966) 365 F.2d 651; Cf. Falsetti v. Local Union No. 2026, United Mine Workers, (C.C.A.Pa. 1966) 355 F.2d 658, 660: "The problem of who has standing to assert a Section 301 claim for relief is an unsettled one."

dies, Inc.) and the I.L.G.W.U. and/or Local 581." The plaintiffs' cases turn upon the application, and especially the legality, of these "terms and conditions * * * of the agreement or labor contract." It is the contention of the plaintiffs—and this is the heart of their case—that the provisions authorizing such deductions contravene the Right-to-Work Statute of South Carolina (Section 40–46.3 et seq., of the Code of Laws of South Carolina, 1962), with which, by virtue of Section 164(b), 29 U.S.C., this contract must accord. The plaintiffs' basis of recovery depends wholly upon this claim of invalidity in the provisions of the contract authorizing such deductions. Accordingly, "the interpretation and enforceability" of "the terms and conditions" of the labor contract are the determining factors in the suits. The rights of the plaintiff will turn upon the construction of the contract. That construction, including the matter of the applicability of the state statute, must be had in line with the "substantive principles of federal labor law." Local 174, Teamsters, Chauffeurs, etc., v. Lucas Flour Company, (1962), 369 U.S. 95, 102, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593. Whether filed in state court, as it might be (Dowd Box Co. v. Courtney, (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483), or in federal court, an action turning on the construction of a labor contract in an industry affecting commerce, as these do, arises out of and is controlled by federal labor law under the provisions of Section 301(a).

The mere fact that, if that construction accords with the plaintiff's theory of the case, the plaintiffs may have recovery of the amount of such improper deductions as well as punitive damages and attorneys' fees as provided in Section 40–46.8 of the South Carolina Code, cannot strip the actions of their essential character as suits based upon and involving fundamentally the construction of a labor contract in consonance with the "substantive principles of federal labor law." See Johnson v. England, supra, 356 F.2d at pp. 47–8.

However much plaintiffs may claim that their suits are in tort, the complaints herein are patently "contract oriented". Woody v. Sterling Aluminum Products, Inc. (C.C.A.Mo.1966), 365 F.2d 448, 456. If plaintiffs have any rights in tort, such rights would involve and essentially rest upon the interpretation and construction of the labor contract and would be cognizable under Section 301. Falsetti v. Local Union No. 2026, United Mine Workers, (D.C.Pa.1964) 34 F.R.D. 461, 462, aff. 355 F.2d 658. In short, the fundamental facts on which the suits are centered, are the facts concerned with the labor contract, its construction and enforceability. To hold that such suits, which can only be resolved by a construction of the labor contract, may, merely because plaintiffs ask damages under the South Carolina statutes, escape the jurisdiction conferred by Section 301, including the application of substantive federal law, would violate the purpose of the section as it has been repeatedly construed by the Supreme Court. Whether plaintiffs describe their action as in contract or in tort and whether their damages may be measured in whole or in part by State statutes, all the plaintiffs' claims, to paraphrase the language of the Court in United Mine Workers of America v. Gibbs, (1966) 383 U.S. 715, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, "derive from a common nucleus of operative fact" which is the labor contract itself and are justiciable under Section 301(a). See, also, 80 Harv.Law Rev., pp. 220–4.

Nor does Retail Clerks Intern. Ass'n, etc. v. Schermerhorn (1963) 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179, cited by the plaintiffs, militate against the conclusion that these suits are cognizable under Section 301(a). That case merely held that the action therein was maintainable in the State Courts. The instant suits, without question, are maintainable in the State Courts. This the Courtney Case, supra, clearly held, but it is equally well settled that they are maintainable too in the Federal Court. Humphrey v. Moore, supra; O'Rourke v.

Breakstone Bros., Inc. (D.C.N.Y.1963) 218 F.Supp. 648; Humphrey v. Thyer Manufacturing Corporation (D.C.Miss. 1963) 221 F.Supp. 117. The jurisdiction is concurrent in both state and federal courts in such cases.[5]

While I am of opinion that these cases have been properly removed to this Court, counsel for the plaintiffs indicated during argument that a large number of additional similar cases will be filed. It would be an undue burden upon the parties and this Court to engage upon the trial of all these cases; and then, if the conclusion of this Court on these motions were to be reversed on appeal, to have the trials voided and the suits remanded to the State Courts for a new trial. I am of the opinion that the Order I am about to sign denying the motion to remand involves a controlling question of law as to which there can be substantial ground for difference of opinion, and I am further of the opinion that an immediate appeal from this Order would materially advance the ultimate determination of the litigation. Further proceedings in the district court are stayed to permit appeal to be taken from the Order denying the motion for remand, the application for such review to be made within ten days after the date of the Order denying remand. 28 U.S.C.A. Section 1292(b).

The motions to remand are, therefore, overruled, and

It is so ordered.

5. Speaking to this same point in Humphrey v. Moore, supra, 375 U.S. at p. 344 84 S. Ct. 363, at p. 369, the Court said:

"Even if it is, or arguably may be, an unfair labor practice, the complaint here alleged that Moore's discharge would violate the contract and was therefore within the cognizance of federal and state courts, Smith v. Evening News Assn., supra, subject, of course, to the applicable federal law."

It is of interest, though not controlling in an issue of this character that, while there have been several South Carolina decisions under that State's Right-to-Work Statute, no claim of exclusivity of state remedy has been asserted; on the contrary, the question has generally been whether there is federal exclusivity. In the earliest one, Branham v. Miller Electric Co. (1961) 237 S.C. 540, p. 548, 118 S.E.2d 167, p. 171, 92 A.L.R.2d 592, the Court said,

"The issue of exclusive Federal jurisdiction, suggested by the fourth ground of the demurrer, was not passed upon by the court below, and is therefore not properly before us."

Kimbrell v. Jolog Sportswear, Inc. (1962) 239 S.C. 415, 123 S.E.2d 524, involved the same employer as in these suits but the complaint therein made no reference to any collective bargaining contract. Again, the decision turned on the issue of exclusive federal jurisdiction in the National Labor Relations Board and did not deal with concurrent federal and state court jurisdiction over a suit involving a labor contract.

In Burris v. Electro Motive Mfg. Co., (1966) 247 S.C. 579, 148 S.E.2d 687, the Court again refused, on the facts of that particular case, to consider whether there was exclusive federal jurisdiction, since it found other fatal defects in plaintiff's cause of action.

It may be argued from these cases that the South Carolina Court, at least by implication, has recognized concurrent jurisdiction of state and federal courts in cases such as are presented here.